Marco A. Gonzalez and his wife Theresa Gonzalez sued Blue Cross/Blue Shield of Alabama ("Blue Cross") and Alfa Mutual Insurance Company ("Alfa Mutual"), after Blue Cross had refused to pay insurance claims relating to the birth of the Gonzalezes' son. The designation of the "Alfa" defendant has caused several problems in this case. First, there has been a question whether the proper legal designation of this defendant should be "Alfa Insurance Company" or "Alfa Mutual Insurance Company." The Gonzalezes' original complaint of August 14, 1994, named "Alfa Insurance Company" as a defendant. In a motion for an extension of time and in its answers to the plaintiffs' interrogatories, the Alfa defendant stated that the designation in the complaint was erroneous and should instead read "Alfa Mutual Insurance Company." To further complicate matters, there is an additional issue of which "Alfa" corporation, "Alfa Mutual Insurance Company" or "Alfa Services, Inc.," — the two are alleged to be different corporate entities — had actually provided the insurance coverage to the Gonzalezes. Hereinafter, we shall refer to these corporations as "Alfa Mutual" and "Alfa Services," respectively. The plaintiffs amended their complaint on May 17, 1996, to change the designation of the Alfa defendant from "Alfa Insurance Company" to "Alfa Services, Inc." On May 20, 1996, the trial judge entered a summary judgment in favor of "Alfa Mutual."
Against both defendants the Gonzalezes stated claims of breach of contract and bad faith failure to pay an insurance claim, and they also stated a claim of fraud against Alfa Mutual. The trial court entered a summary judgment for Blue Cross on the bad faith claim and a summary judgment for Alfa Mutual on all claims and made those summary judgments final pursuant to Rule 54(b), Ala. R. Civ. P. The Gonzalezes appeal. We affirm.
The Gonzalezes sought family health insurance coverage. On January 28, 1993, they completed and signed a "Blue Cross and Blue Shield Application for Health Coverage" and then submitted this application to the Alfa Service Center in Pelham, Alabama. Under a contract with Alfa Services, Blue Cross acts as the claims administrator for the Alfa Health Plan, the policy for which the Gonzalezes applied. Blue Cross approved the application and mailed a "Certificate of Alfa Group Health Benefits" ("the certificate") to the Gonzalezes. The final page of the application is entitled "Conditions of Enrollment"; the conditions stated there include an acknowledgment that the insured understands that maternity care benefits would be covered under the insurance policy but would be subject to a 365-day waiting period:
"I, the undersigned, represent that:
". . . .
 "7. I understand that the program I am applying for will not cover myself or my enrolled dependents until 365 days after my effective date of coverage for . . . maternity benefits. . . ."
The certificate issued to the Gonzalezes contained a similar explanation of the 365-day waiting period for maternity benefits:
 "Each female Subscriber or wife of a male Subscriber covered by Family Coverage Including Maternity Benefits must serve a waiting period of 365 consecutive days before benefits for maternity care are available to her under this Contract. The 365-day waiting period begins the date on which she is covered by Family coverage Including Maternity Benefits. The entire 365-day waiting period must be served before she receives services or supplies or is admitted to the Hospital for Maternity Care except when the pregnancy terminates before her expected delivery date which, if carried to full term, would have occurred after the expiration of the 365-day waiting period."
Under these provisions, the Gonzalezes' waiting period for maternity benefits began on March 1, 1993, the effective date of their coverage, and would expire on February 28, 1994. *Page 815 
Marco Gonzalez, who is an attorney at law, alleges that he was not told, before he submitted the application and a $650 check to cover the first premium, that there was a 365-day waiting period for maternity benefits. Indeed, he alleges that an employee at the Alfa Service Center told him, instead, that he and his family would have "full coverage immediately." Marco Gonzalez also alleges that he did not read the application before signing it and did not read the certificate until after Blue Cross had rejected the claim relating to the birth of his son.
On June 30, 1993, during an examination by her family doctor, Dr. Bryan McClelland, Mrs. Gonzalez discovered that she was pregnant. The following day, she visited her obstetrician-gynecologist, Dr. Robert May, who confirmed Dr. McClelland's findings. Because Dr. May was nearing retirement, the Gonzalezes chose Dr. William Somerall to care for Mrs. Gonzalez during her pregnancy and to deliver the baby. On September 8, 1993, Mrs. Gonzalez visited Dr. Robert Ryan, who performed an ultrasound examination. After the claim for this service was submitted for payment, Blue Cross requested the results of the ultrasound examination to determine the applicability of the waiting period to Mrs. Gonzalez's pregnancy. On November 12, 1993, Blue Cross received the ultrasound computer printout, which listed the first day of Mrs. Gonzalez's last menstrual period as May 23, 1993, showed that the fetus had a gestational age of about 15.6 weeks, and designated the expected delivery date as February 26, 1994. The accompanying report from Dr. Ryan said that the clinical expected delivery date was February 27, 1994. Both of these due dates were before the expiration of the waiting period on February 28, 1994.
On February 22, 1994, Mrs. Gonzalez was admitted to Brookwood Medical Center and there gave birth on February 24, 1994, to a nine-pound, five-ounce, baby boy. It is undisputed that the actual delivery date came before the expiration of the waiting period. The claims associated with the delivery, which included the hospital admission, the delivery itself, and an epidural, were submitted to Blue Cross for payment. Blue Cross paid claims on March 14 and March 28, 1994, for the delivery and the epidural, respectively. But on March 31, 1994, Blue Cross rejected the $8,031.90 claim for Mrs. Gonzalez's hospital stay from February 22 to February 26, 1994. On April 13, 1994, Blue Cross paid the claim for the ultrasound examination, which had been performed by Dr. Ryan on September 8, 1993. However, Blue Cross later determined that this ultrasound claim, as well as the claims for the delivery and the epidural, had all been paid in error, and it requested refunds of amounts it had initially paid for these services.
After being notified that Blue Cross had rejected the hospital admission claim, Mr. Gonzalez wrote two letters, dated May 2 and May 18, 1994, to Brookwood Medical Center, requesting information and documentation regarding why that claim had been rejected. Copies of these letters were also sent to Blue Cross. On June 6, 1994, Martha Melton, a Blue Cross customer service representative, wrote to Mr. Gonzalez, acknowledging receipt of his letters and stating that Mrs. Gonzalez's medical records had been forwarded to the Blue Cross medical review staff. On June 20, 1994, the Gonzalezes received a letter, by certified mail, from Brookwood Medical Center with an enclosed copy of a Blue Cross remittance notice dated March 31, 1994, stating that benefits were unavailable for Mrs. Gonzalez's hospital admission because the waiting period specified in the contract had not been served. Also on June 20, Blue Cross sent Mr. Gonzalez a letter offering the same explanation — that the hospital admission claim had been rejected because of the 365-day waiting period. In reply, Mr. Gonzalez wrote another letter to Blue Cross, dated July 13, 1994, enclosing copies of a letter from Dr. McClelland and a record from Dr. May stating that Mrs. Gonzalez's positive pregnancy test was given on June 30, 1993, and that the first day of her last menstrual period was documented as June 21, 1993. Mr. Gonzalez claimed that this information he submitted indicated an expected delivery date that was after February 28, 1994, and thus was outside the waiting period. Lynn Farley, medical director with Blue Cross, wrote back, explaining that this new information provided by Drs. *Page 816 
McClelland and May conflicted with the previously submitted ultrasound records from Dr. Ryan that Blue Cross had reviewed. Farley's letter further stated that, in light of the conflicting information, Blue Cross had requested additional records from Drs. Somerall and May and that Blue Cross would reconsider whether the hospital admission claim would be paid. The Gonzalezes did not wait for a response from Blue Cross, but filed this action on August 17, 1994.
On appeal, the Gonzalezes raise four issues: They contend that the trial court erred because: (1) they say they created a genuine issue of material fact on their bad faith claim against Blue Cross; (2) they say the court erred in striking an affidavit by Dr. Ryan that the Gonzalezes had offered with their motion to alter, amend, or vacate the summary judgment on the bad faith claim; (3) they contend the summary judgment for Alfa Mutual on all claims was improper; and (4) they say the court erred in overruling their motion to compel the defendants to comply with certain discovery requests. We shall address each of these arguments in turn.
 I. The Bad Faith Claim Against Blue Cross
The Gonzalezes argue that on their bad faith claim against Blue Cross they presented evidence creating genuine issues of material fact for a jury to decide and, therefore, that the trial judge erred by granting Blue Cross's motion for summary judgment.
A summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P. On a motion for summary judgment, the burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact to be considered by the jury. Brantley v.Proactive Ins. Corp., 632 So.2d 969 (Ala. 1994). When the moving party has made this prima facie showing, the burden shifts to the nonmoving party to present "substantial evidence" creating a genuine issue of material fact. Id.; § 12-21-12, Ala. Code 1975. "[S]ubstantial evidence is evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). In determining whether a summary judgment was proper, this Court must view the evidence in a light most favorable to the nonmoving party. Brantley, at 970.
This Court first recognized an actionable tort for an insurer's bad faith refusal to pay an insurance claim inChavers v. National Security Fire Cas. Ins. Co., 405 So.2d 1
(Ala. 1981). "Bad faith is the intentional failure by an insurer to perform the duty of good faith and fair dealing implied by law." Koch v. State Farm Fire Cas. Co., 565 So.2d 226, 229
(Ala. 1990). In Chavers the Court held:
 "[A]n actionable tort arises [from] an insurer's intentional refusal to settle a direct claim where there is either '(1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal.' "
405 So.2d at 7. The Gonzalezes' bad faith claim rests on the second tier of the Chavers test, which was clarified in GulfAtlantic Life Ins. Co. v. Barnes, 405 So.2d 916, 924
(Ala. 1981):
 "The second tier of the test is an elaboration on the first. The trier of fact, by finding, on the part of the insurer, an 'intentional failure to determine whether or not there was any lawful basis for refusal,' may use that fact as an element of proof that no lawful basis for refusal ever existed. The relevant question before the trier of fact would be whether a claim was properly investigated and whether the results of the investigation were subjected to a cognitive evaluation and review. Implicit in that test is the conclusion that the knowledge or reckless disregard of the lack of a legitimate or reasonable basis may be inferred and imputed to an insurance company when there is a reckless indifference to facts or to proof submitted by the insured."
The elements of a bad faith claim were summarized inNational Security Fire *Page 817 Cas. Co. v. Bowen, 417 So.2d 179 (Ala. 1982), as follows:
 "An insurer is liable for its refusal to pay a direct claim when there is no lawful basis for the refusal coupled with actual knowledge of that fact. Chavers v. National Security Fire [ Cas.] Co., [405 So.2d 1 (Ala. 1981)]. No lawful basis 'means that the insurer lacks a legitimate or arguable reason for failing to pay the claim.' Gulf Atlantic Life Ins. Co. v. Barnes, [405 So.2d 916
(Ala. 1981)]. When a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. Ibid.
 "Under those authorities the plaintiff in a 'bad faith refusal' case has the burden of proving:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith
nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.
 "The 'debatable reason' under (c) above means an arguable reason, one that is open to debate or question."
417 So.2d at 183.
In Blackburn v. Fidelity Deposit Co., 667 So.2d 661, 668
(Ala. 1995), we stated:
 "In bad faith cases involving an insurer's refusal to pay an insurance claim, this Court has established the 'directed verdict on the contract claim' standard. In National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357, 1362 (Ala. 1982), we stated:
 " 'In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim, and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.'
 "However, in Thomas v. Principal Financial Group, 566 So.2d 735 (Ala. 1990), we noted that the 'directed verdict on the contract claim' test was not applicable to decide every bad faith claim. Citing Continental Assurance Co. v. Kountz, 461 So.2d 802 (Ala. 1984), and Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916 (Ala. 1981), we held that even if an insured was not entitled to a directed verdict on the contract claim, the bad faith claim could be submitted to the jury if 'the insurer either intentionally or recklessly failed to properly investigate the claim or subject the results to a cognitive evaluation and review.' Thomas, supra, at 744."
Thus, the issue before this Court is whether the Gonzalezes presented substantial evidence that Blue Cross failed to properly investigate the Gonzalezes' claims or to subject the results of its investigation to a "cognitive evaluation and review."
The policy issued to the Gonzalezes specifically requires that coverage be in effect for 365 days before maternity benefits will be provided. As previously noted, the effective date of the policy in this case was March 1, 1993, so the waiting period for maternity benefits expired on February 28, 1994. Mrs. Gonzalez gave birth on February 24, 1994, before the expiration of the waiting period. However, the policy also specifies that maternity benefits would be provided "when the pregnancy terminates before [the] expected delivery date which, if carried to full term, *Page 818 
would have occurred after the expiration of the 365-day waiting period." Thus, because the actual birth of the Gonzalezes' baby came before the expiration of the waiting period, the maternity care services rendered to Mrs. Gonzalez would be covered under the policy only if the expected delivery date was after the expiration of the waiting period on February 28, 1994.
The record shows that on November 1, 1993, Blue Cross requested the records of Mrs. Gonzalez's ultrasound examination that had been performed on September 8, 1993, by Dr. Ryan, in order to determine the applicability of the waiting period. It is undisputed that Blue Cross received both the computer printout indicating the results of that examination and showing an expected delivery date of February 26, 1994, and the accompanying report from Dr. Ryan stating that the clinical expected delivery date was February 27, 1994. In addition, Mrs. Gonzalez's Hospital "Admission Summary, Delivery and Newborn Record" from Brookwood Medical Center also lists the expected delivery date as February 27, 1994, and it states the gestational age as approximately 39.2 weeks and states that the baby was nine-pounds, five-ounces and that the pregnancy was considered full-term. (C.R. 110) Each of these documents, all of which show the dates of actual delivery and expected delivery to be before the expiration of the waiting period, was sufficient to establish an arguable or debatable reason for denying the claim.
The Gonzalezes counter by arguing that there is no evidence that the information in Mrs. Gonzalez's file was actually considered by Blue Cross medical review personnel until after the claim was initially rejected on March 31, 1994. The Gonzalezes correctly argue that Blue Cross cannot defeat a bad faith claim by advancing reasons for the denial, no matter how valid, that were discovered only after it had rejected an investigation of the claim. "Whether an insurance company is justified in denying a claim under a policy must be judged by what was before it at the time the decision was made."Dutton, 419 So.2d at 1362. However, Blue Cross records show that Mrs. Gonzalez's file, which included the ultrasound results and Dr. Ryan's report, both of which indicated due dates that would come before the expiration of the waiting period, had been forwarded for medical review as of November 29, 1993. (C.R. 452) In addition, the record also shows that at least by January 25, 1994, Blue Cross was aware that Mrs. Gonzalez's expected delivery date was February 26, 1994, and it also shows that by January 25 Blue Cross had already determined that the exclusion (for the case of a baby born during the waiting period whose full-term delivery would have come after the waiting period had ended) could be applicable. (C.R. 449.)
The Gonzalezes next argue that Blue Cross failed to properly evaluate their claim, arguing that when Blue Cross rejected their claim it had not yet discovered or considered the information from Drs. May and McClelland that indicated an expected delivery date outside the waiting period. Blue Cross did not receive this information until Mr. Gonzalez submitted it with his letter dated June 13, 1994, several months after Blue Cross had initially denied the claim. However, the record indicates no reason for Blue Cross to believe that the information already in its possession was incorrect or incomplete. Even assuming that Blue Cross had considered the records submitted by Drs. May and McClelland and had then denied the claim, the ultrasound results and the hospital delivery records in Blue Cross's possession showing that both the actual and the expected delivery dates were before the expiration of the waiting period still would provide at least an arguable or debatable basis for Blue Cross to deny the claim; and once Mr. Gonzalez submitted the conflicting information regarding the expected date of delivery, Blue Cross agreed to reopen the file and to review its determination that it had a valid reason to deny the claim. Thus, the Gonzalezes cannot complain that Blue Cross did not properly investigate the claim once it received evidence indicating that the denial of benefits might have been incorrect. See King v. NationalFoundation Life Ins. Co., 541 So.2d 502, 505 (Ala. 1989). We conclude that the trial court properly entered the summary *Page 819 
judgment in favor of Blue Cross on the claim of bad faith.
 II. The Affidavit of Dr. Ryan
After the trial court had entered the summary judgment for Blue Cross on the bad faith claim, the Gonzalezes moved to alter, amend, or vacate that judgment, pursuant to Rule 59, Ala. R. Civ. P., and offered with their motion an affidavit of by Dr. Robert Ryan. Blue Cross responded by moving to strike the affidavit. The trial court granted Blue Cross's motion to strike the affidavit and denied the Gonzalezes' Rule 59 motion.
The Gonzalezes argue that the trial court erred in striking Dr. Ryan's affidavit. However, we do not address this issue, because the Gonzalezes' brief does not does not comply with Rule 28(a), Ala.R.App.P. The Gonzalezes' brief states as one of its issues: "Did the trial court commit prejudicial error in overruling Appellants' Motion to Reconsider and granting Appellee's Motion to Strike the Affidavit of Dr. Robert T. Ryan?" The Gonzalezes' brief merely cites the affidavit as if it had been admitted as evidence, but the Gonzalezes completely fail to argue why excluding the affidavit was error and they cite no authority to support their position. "When an appellant fails to properly argue an issue, that issue is waived and will not be considered on appeal." Sullivan v. Alfa Mut. Ins. Co.,656 So.2d 1233 (Ala.Civ.App. 1995), citing Boshell v. Keith,418 So.2d 89 (Ala. 1982).
 III. The Summary Judgment for Alfa Mutual
The Gonzalezes next argue that the trial court incorrectly entered the summary judgment for Alfa Mutual on all their claims, i.e., breach of contract, bad faith, and fraud.
The Gonzalezes claimed that they entered into a health insurance contract with Alfa Mutual and that Alfa Mutual breached that contract by failing to pay the claims relating to Mrs. Gonzalez's maternity care. Before the trial court, Alfa Mutual argued that it was entitled to a summary judgment on the breach of contract claim because, it said, there was no evidence to show that a contract existed between it — Alfa Mutual Insurance Company — and the Gonzalezes. Rather, Alfa Mutual contended, the Gonzalezes' contract of health insurance was with Blue Cross and had been issued through the group carrier, Alfa Services, Inc., a corporate entity separate and distinct from Alfa Mutual.
The essential elements of a contract are an agreement, consideration, two or more contracting parties, a legal object, and capacity. Shirley v. Lin, 548 So.2d 1329 (Ala. 1989). The Gonzalezes presented no substantial evidence indicating that a contract existed between them and Alfa Mutual. The certificate received by the Gonzalezes shows that their insurance coverage under the Alfa Health Plan was through Alfa Services, not Alfa Mutual:
"Introduction
". . . .
 "This Certificate describes group health benefits available to persons in accordance with the terms of the Contract between Alfa and Blue Cross and Blue Shield of Alabama. . . .
 "By itself this Certificate is not a contract, although it is part of the Contract. See Section I ('Definitions') paragraph 7 ('Contract') for what makes up the Contract between Alfa and [Blue Cross]. . . .
". . . .
"Section I Definitions
". . . .
 "7. 'Contract' means the Group Health Benefits Contract between Alfa Services, Inc. and [Blue Cross]. The Contract is made up of three parts. The first part is your Group's application to [Blue Cross] for the Contract. The second part is this Certificate when we issue it to your Group in response to that application.
". . . .
 "17. 'Group' or 'Group Agent' means Alfa Services, Inc., with whom [Blue Cross has] the Contract and through which you[the insured] have coverage."
(Emphasis added.) The Gonzalezes do not dispute Alfa Mutual's allegation that Alfa Mutual Insurance Company and Alfa Services, Inc., are different corporations. Indeed, *Page 820 
the Gonzalezes amended their complaint on May 17, 1996, to change the designation of the "Alfa" defendant from "Alfa Insurance Company" to "Alfa Services, Inc.," implicitly acknowledging that their original complaint designated the incorrect party as a defendant in this action.
The Gonzalezes argue, however, that, as a result of certain statements made by opposing counsel during a deposition and in a legal brief, it is "undisputed" that a contract existed between them and Alfa Mutual. Thus, the Gonzalezes appear to contend that Alfa Mutual has stipulated to the existence of such a contract and should not be permitted now to argue the issue. In support of their position, the Gonzalezes first allege that during the deposition of Martha Melton, a Blue Cross customer service representative, the attorney then representing both Blue Cross and Alfa Mutual, Bert Nettles, agreed to the existence of a contract between the Gonzalezes and Alfa Mutual. The deposition transcript in the record indicates the following exchange between Bert Nettles and Marco Gonzalez, who was acting as his own attorney:
 "Mr. Gonzalez: What I'm trying to get at is for you to confirm for me, Mrs. Melton, whether or not . . . — maybe we can agree . . . that the Gonzalezes had effective coverage at the time of the birth of their son, whether they had a contract of insurance with Blue Cross and Blue Shield.
 "Mr. Nettles: She stated and we have admitted in the answers that there is a contract of insurance that existed.
". . . .
 "Mr. Gonzalez: We do have an agreement, then, Bert, that the agreement — I forgot what the answer said — that there was a valid contract with Blue Cross and Blue Shield at the time of the baby's birth?
"Mr. Nettles: Yes, with a waiting period."
(C.R. 287.) (Emphasis added.) The Gonzalezes further claim that Nettles also stipulated that the Gonzalezes had family coverage through "a group Alfa Mutual Insurance Company Health Plan"; they say this stipulation came in the Blue Cross brief filed in the trial court in support of Blue Cross's motion for summary judgment.
A stipulation is defined as a " 'voluntary agreement between opposing counsel concerning [the] disposition of some relevant point so as to obviate [the] need for proof or to narrow [the] range of litigable issues.' " Evans v. Alabama ProfessionalHealth Consultants, Inc., 474 So.2d 86 (Ala. 1985) (quotingBlack's Law Dictionary 1269 (5th ed. 1979)). "Parties may stipulate the issues in a case[,] with the consequence that such stipulations are binding." Vann Express, Inc. v. Phillips,539 So.2d 296 (Ala.Civ.App. 1988). Agreements between parties or by their attorneys "made in open court or at pretrial conferences are binding, whether such agreements are oral or written." Jones v. Gladney, 339 So.2d 1019 (Ala. 1976), citing Rule 47, Ala.R.App.P., and, under some circumstances, agreements made during a deposition, a transcript of which appears in the record, may be deemed to have been made "in open court" and thus may be enforceable, notwithstanding that there was no signed writing. See Ex parte W.Y., 605 So.2d 1175
(Ala. 1992); see also McKelvy v. Darnell, 587 So.2d 980
(Ala. 1991).
Neither of the statements relied on by the Gonzalezes helps them. Even if we assumed that the exchange between Marco Gonzalez and Bert Nettles during the deposition did constitute a stipulation of an issue, Nettles's answers could affirm only that the Gonzalezes had a contract with Blue Cross, not that they had a contract with Alfa Mutual. The witness being deposed was an employee of Blue Cross, and Marco Gonzalez asked whether it was agreed that the Gonzalezes had a valid contract of insurance with Blue Cross. Nettles answered in the affirmative. Neither Nettles nor Mr. Gonzales referred to Alfa Mutual.
Later, in his brief filed on March 5, 1996, in support of Blue Cross's motion for summary judgment, Nettles did refer to the fact that the Gonzalezes had insurance coverage through a policy with Alfa Mutual. Section 34-3-21, Ala. Code 1975, provides that "An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, *Page 821 
or by an entry to be made on the minutes of the court." Once again, even if we assumed that such a statement by counsel in a brief was binding upon the party counsel represents, we would note that the record shows that Nettles did not represent Alfa Mutual when he filed Blue Cross's brief. On October 25, 1995, attorney Connie Ray Stockham filed a notice of appearance as separate counsel for Alfa Mutual. Since that time, Nettles has represented Blue Cross only and has not acted on behalf of Alfa Mutual in any matter connected with this case. Even if Nettles stated in his brief, which was admittedly submitted on behalf of Blue Cross rather than Alfa Mutual, that he agreed that Alfa Mutual had entered into a contract with the Gonzalezes, that statement would not help the Gonzales, because Alfa Mutual was no longer his client when he filed that brief. Therefore, Alfa Mutual is not bound by his statements or agreements. SeeShoals Community College v. Colagross, 674 So.2d 1311
(Ala.Civ.App. 1995). We find in the record no evidence that Alfa Mutual stipulated that it had entered into a contract with the Gonzalezes. Indeed, the undisputed evidence shows that it did not enter into such a contract. Thus, the trial court correctly entered the summary judgment for Alfa Mutual on the breach of contract claim.
We have noted above, in our discussion of the elements of an action for bad faith failure to pay an insurance claim, that the plaintiff in such an action has the burden of proving the existence of an insurance contract between the parties and a breach thereof by the defendant. See Bowen, 417 So.2d at 183. Because we have already determined that the trial court correctly held that evidence showed there was no contract of insurance between the Gonzalezes and Alfa Mutual, we must also conclude that the Gonzalezes failed to present the evidence necessary to defeat the summary judgment motion as to their bad faith claim against Alfa Mutual. The Gonzalezes offered no evidence that there was an insurance contract between the parties and that the insurer had breached that contract. SeeBean v. State Farm Fire Cas. Co., 591 So.2d 17, 22
(Ala. 1991).
We now consider the summary judgment for Alfa Mutual as it regards the Gonzalezes' fraud claim. Marco Gonzalez alleges that he was told by an agent or employee at the Alfa Service Center in Pelham that the Gonzalez family would have "full coverage immediately." He claims that he was defrauded by Alfa Mutual because maternity benefits were not available immediately, but were, rather, subject to the 365-day waiting period.
"The elements of a fraud claim are: (1) a misrepresentation of a material fact [by the defendant]; (2) made willfully to deceive or recklessly without knowledge; (3) which was justifiably relied upon by the plaintiff under the circumstances; and (4) which caused damage as a proximate consequence." Howard v. Mutual Sav. Life Ins. Co.,650 So.2d 868, 871 (Ala. 1994); see § 6-5-101, Ala. Code 1975. The misrepresentations of an insurance agent may be imputed to his or her insurer principal. Washington Nat'l Ins. Co. v.Strickland, 491 So.2d 872, 874 (Ala. 1985).
We have held that the Gonzalezes presented no substantial evidence that their insurance coverage was issued through Alfa Mutual. There may be evidence indicating that the agent who solicited the Gonzalezes to purchase insurance and who allegedly made the misrepresentation to Marco Gonzalez was acting as an agent on behalf of some principal. However, the Gonzalezes presented no evidence that the agent was, at that time, acting on behalf of Alfa Mutual. Therefore, any misrepresentation on the part of the agent would not be imputable to Alfa Mutual. We conclude that the summary judgment in favor of Alfa Mutual was proper as to the fraud claim.
 IV. The Motion to Compel Discovery
The Gonzalezes' final argument is that the trial court erred in overruling their motion to compel the defendants to comply with discovery requests that asked for information regarding all similarly situated policyholders who in the preceding three years had been denied maternity benefits on account of the waiting period and that asked for copies of all the defendants' commercials and advertisements that had run in Alabama in the *Page 822 
preceding three years. The Gonzalezes' motion to compel was initially granted by the trial court. After Blue Cross and Alfa Mutual filed motions to reconsider that ruling, the trial court overruled the motion to compel. The Gonzalezes argue that the trial court erred because they say the information they requested is in fact discoverable, even if the trial judge subsequently should find it to be inadmissible.
In Ex parte Mobile Fixture Equipment Co., 630 So.2d 358,360 (Ala. 1993), this Court stated:
 "Each request for a motion to compel answers to interrogatories [and each request for production] must of necessity be decided on its own facts and circumstances, a determination which the trial court is in a better position to make than is this Court. The rule of law, on review of orders entered in matters involving discovery[,] is that this Court will not reverse the trial court's decision . . . unless there is a clear showing that the trial judge abused his discretion in making his decision."
630 So.2d at 360, quoting Ex parte McTier, 414 So.2d 460, 461
(Ala. 1982). With this standard in mind, we conclude that the Gonzalezes have failed to show that the trial judge abused his discretion in overruling the motion to compel. On February 17, 1995, the judge held a status conference, at which he entered an order requiring that all medical discovery and other discovery be completed by June 15, 1995. The Gonzalezes did not file their two items styled "Interrogatories and Request for Production" asking both defendants to produce the information regarding the similarly situated policyholders and the defendants' advertisements, until October 5, 1995, and January 22, 1996. Both discovery requests came well beyond the deadline set by the trial court, and it was therefore within the court's discretion to overrule the motion to compel.
 V. Conclusion
The trial court correctly entered the summary judgment for Blue Cross on the claim of bad faith and correctly entered the summary judgment for Alfa Mutual on all claims.
Those judgments are affirmed.
AFFIRMED.
HOOPER, C.J., and ALMON, HOUSTON, KENNEDY, COOK, BUTTS, and SEE, JJ., concur.
MADDOX, J., recuses.