STUART, Justice.'
 

 Tender Care Veterinary Hospital, Inc. (“TCVH”), appeals the summary judgment entered by the Montgomery Circuit Court in favor of First Tuskegee Bank on breach-of-fiduciary-duty and fraud claims asserted by TCVH stemming from a construction loan TCVH received from First Tuskegee in September 2004. We affirm.
 

 I.
 

 In 2004, TCVH sought financing from First Tuskegee to construct a veterinary clinic and animal hospital in Pike Road. TCVH asserts that First Tuskegee ultimately agreed to loan TCVH the requested funds on the condition that TCVH employ PJ Construction and Services, Inc. (“PJ Construction”), as the general contractor on the project. TCVH’s president, Dr. Patricia Joyce Patterson, testified in a deposition that she agreed to that condition after First Tuskegee’s president, James W. Wright, assured her that PJ Construction would “do a good job.” Accordingly, on September 30, 2004, TCVH executed a loan agreement with First Tuskegee pursuant to which it borrowed $675,000.
 
 [1]
 
 TCVH subsequently executed three more loan agreements with First Tuskegee, borrowing an additional $567,000, $75,000, and $9,145, respectively.
 

 TCVH thereafter entered into a. construction agreement with PJ Construction, and, pursuant to that agreement, PJ Construction began work at TCVH’s site in Pike Road. Under the terms of that construction agreement, the maximum price of the project was to be $300,000 and work was to be completed within 180 days, or approximately some time in April 2005.
 
 [2]
 
 However, almost immediately after work began, TCVH became concerned about the quality and timeliness of PJ Construction’s performance. Dr. Patterson stated in her deposition that by January 2005 she was concerned that PJ Construction would not complete the project on time. By April 2005, the relationship between TCVH and PJ Construction was essentially broken; TCVH was unhappy with the work PJ Construction had performed to date and was unwilling to authorize First Tuskegee
 
 *35
 
 to disburse to PJ Construction the Ml amounts it was requesting for the work it had completed. It appears that PJ Construction performed no significant work at TCVH’s site after April 2005, and it ceased virtually all activities related to TCVH by approximately May 11, 2005, before completely abandoning the project some time in late July 2005.
 
 [3]
 

 TCVH subsequently received approval from First Tuskegee to act as its own general contractor, and it thereafter supervised construction and managed subcontractors until the veterinary clinic and animal hospital opened in August 2006. However, the business was not profitable and, in September 2007, TCVH filed a petition for bankruptcy protection. In January 2008, First Tuskegee sued TCVH’s owners, Dr. Patterson and Dr. Howard King, seeking to recover on personal guaranty agreements they had made as part of the loans issued to TCVH, and in July 2008 First Tuskegee obtained a $1,623,285 judgment against them. TCVH was also engaged in multiple other lawsuits related to the construction of its facility and its business operations during this time.
 

 On April 7, 2009, TCVH initiated the instant action when it moved the Montgomery Circuit Court to enter an injunction enjoining First Tuskegee from selling the TCVH property at a foreclosure sale later that day. Upon TCVH’s agreeing to deposit one month’s interest on the loans — $11,063—with the court, the trial court enjoined the foreclosure sale for 30 days to allow TCVH additional time to pay the amounts it owed First Tuskegee. However, after that 30-day period had expired and TCVH still had not made Ml payment of the loans to First Tuskegee, the trial court allowed the foreclosure sale to be conducted and eventually disbursed to First Tuskegee the funds being held by the court.
 

 Nothing further happened in the case until approximately two years later, when TCVH moved the trial court to schedule a status conference. At that status conference, the trial court granted TCVH’s request for leave to amend its complaint, and, on December 9, 2011, TCVH filed an amended complaint asserting breach-of-fiduciary-duty and fraud claims against First Tuskegee. The gravamen of those claims was that TCVH had been injured by First Tuskegee’s requirement that it use PJ Construction as the general contractor on the project because PJ Construction was not licensed as a general contractor in Alabama and because the quality of its performance was below the quality one would expect from a properly licensed general contractor. The trial court then reinstated the case to its active docket, and, following a period of discovery, First Tuskegee moved the trial court to enter a summary judgment in its favor, arguing, among other things, that TCVH’s claims were time-barred. Specifically, First Tuskegee noted that both of TCVH’s claims were subject to a two-year statute of limitations and that Dr. Patterson had stated in her deposition that she first learned that PJ Construction was not licensed as a general contractor in approxi
 
 *36
 
 mately July 2005, after she took steps to collect on PJ Construction’s surety bond once it formally left the TCVH site, but TCVH did not initiate an action against First Tuskegee until almost four years later in April 2009. First Tuskegee also moved for a summary judgment on a counterclaim • it had asserted against TCVH seeking to recover the deficiency balance still owed after the foreclosure of TCVH’s property.
 

 TCVH opposed First Tuskegee’s summary-judgment motion and submitted a new affidavit from Dr. Patterson in which she now asserted that she actually had not discovered that PJ Construction was not licensed as a general contractor until November 2008. Thus, TCVH argued, its claims were in fact timely. First Tuskegee promptly moved to strike Dr. Patterson’s affidavit on the ground that it was untimely because it was filed only the day before the summary-judgment hearing and on the basis of the sham-affidavit doctrine. See Rule 56(c)(2), Ala. R. Civ. P. (stating that “any statement or affidavit in opposition [to a summary-judgment motion] shall be served at least two (2) days prior to the hearing”), and
 
 Panayiotou v. Johnson,
 
 995 So.2d 871, 879 (Ala.2008) (“[T]he so-called ‘sham affidavit doctrine’ ... prevents an individual from contradicting prior sworn testimony to avoid the entry of a summary judgment....”).
 

 On April 17, 2014, the trial court granted both First Tuskegee’s motion to strike Dr. Patterson’s affidavit and its motion seeking a summary judgment, stating in relevant part:
 

 “For the reasons set forth in its January 10, 2014, motion for summary judgment, it is ordered, adjudged, and decreed that summary judgment be entered in favor of First Tuskegee Bank on all claims asserted by [TCVH], Without limiting the basis for its decision, the court specifically notes that all claims asserted against First Tuskegee Bank are conclusively barred by the statute of limitations. The undisputed evidence of record reflects that the corporate representative for [TCVH] admitted in deposition that actual discovery of the facts giving rise to the claims in this case was made more than two years before suit was filed in April 2009. In addition, the court finds that the undisputed evidence of record further reflects sufficient facts that reasonably should have provoked inquiry into PJ Construction’s licensure status (which was publicly available) more than two years before suit was filed. Summary judgment likewise is due to be entered in favor of First Tuskegee Bank on its February 26, 2014, supplemental motion for summary judgment on counterclaim. The counterclaim asserts that [TCVH] is in default of its various promissory notes to First Tuskegee Bank, and the court has been presented with no evidence that would contradict the materials submitted by First Tuskegee Bank in support thereof. Accordingly, it is ordered, adjudged, and decreed that a total judgment in the amount of $1,239,919.76, plus court costs, is hereby entered in favor of First Tuskegee Bank and against [TCVH]. Execution may issue in accordance with the provisions of law.
 

 “With all issues having been resolved by the court, this order shall be deemed a final disposition of this action in its entirety.
 

 “The Court finds that any contradictory statements in the affidavit of Patricia Joyce Patterson are simply improper [and] cannot be used to create an issue of fact in light of her unambiguous deposition testimony. First Tuskegee
 
 *37
 
 Bank’s motion to strike is therefore due to be granted to that extent.”
 

 On May 13, 2014, the trial court denied TCVH’s motion to alter, amend, or vacate the order entering the summary judgment in favor of First Tuskegee, and, on June 24, 2014, TCVH filed this appeal.
 

 II.
 

 We review a summary judgment pursuant to the following standard:
 

 “This Court’s review of a summary judgment is de novo.
 
 Williams v. State Farm Mut. Auto. Ins. Co.,
 
 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.;
 
 Blue Cross & Blue Shield of Alabama v. Hodurski
 
 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant.
 
 Wilson v. Brown,
 
 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12.”
 

 Dow v. Alabama Democratic Party,
 
 897 So.2d 1035, 1038-39 (Ala.2004).
 

 III.
 

 TCVH argues that the summary judgment should be reversed because, it argues, the trial court erred in holding that TCVH’s claims were time-barred. Although TCVH acknowledges that both of its claims are subject to a two-year statute of limitations, it argues that the trial court erred by concluding that the claims accrued in approximately July 2005, when First Tuskegee alleges TCVH discovered that PJ Construction was not a licensed general contractor. Rather, TCVH argues that its breaeh-of-fidueiary-duty claim did not accrue until First Tuskegee initiated foreclosure proceedings in early 2009 and their relationship turned adversarial and that its fraud claim did not accrue until November 2008, when TCVH asserts it actually learned that PJ Construction was not a licensed general contractor. TCVH argues that its December 2011 amended complaint asserting those claims relates back to its April 2009 filing and that its claims were- therefore asserted within two years of their accrual in early 2009 and November 2008, respectively. See
 
 Weber v. Freeman,
 
 3 So.3d 825, 834-35 (Ala.2008) (“[The plaintiff’s] clarified second amended complaint was filed after the statutory period had run; therefore, the claims against [the defendant] set forth in the amended complaint are time-barred unless Rule 15, Ala. R. Civ. P., applies. Under Rule 15(c)(2), an amendment relates back to the original complaint when ‘the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading....’ ”).
 

 We first consider the timeliness of TCVH’s breach-of-fiduciary-duty claim. In support of its argument that the limitations period on this claim did not begin to run until its fiduciary relationship with First Tuskegee turned adversarial in early 2009, TCVH cites’
 
 Tonsmeire v. AmSouth Bank,
 
 659 So.2d 601, 604 (Ala.1995), for the proposition that “ ‘[t]he [limitations period] for [an action based on] breach of fiduciary duty begins to run once the fiduciary relationship is terminated and possession of trust property by the trustee
 
 *38
 
 becomes adverse’ ” (quoting -with approval the order of the trial court). However, TCVH fails to recognize that both Ton
 
 smeire
 
 and
 
 Benners v. First National Bank,
 
 247 Ala. 74, 22 So.2d 435 (1945), upon which
 
 Tonsmeire
 
 relied, concerned the alleged breach of fiduciary duties owed by a trustee to the beneficiary of the trust administered by the trustee.
 
 [4]
 
 In the instant case, there is no “trustee” or “trust property,” and it is a different class of fiduciary duties that are alleged to have been breached. In cases alleging a breach-of-fiduciary-duty claim not involving a trust, this Court has not considered the date the parties terminated their fiduciary relationship when considering the application of the two-year statute of limitations; rather, it has focused on when the aggrieved party was damaged. See, e.g.,
 
 System Dynamics Int'l, Inc. v. Boykin,
 
 683 So.2d 419, 421 (Ala.1996) (“[I]n situations where the act itself is not a legal injury, not a completed wrong, and the plaintiffs injury comes only as a result of what the defendant has done, the cause of action accrues and the limitations period begins to run when damage is sustained.”). However, as further explained by the United States District Court for the Middle District of Alabama in
 
 Davis v. Dorsey,
 
 495 F.Supp.2d 1162, 1171 (M.D.Ala.2007), even though a breach-of-fiduciary-duty claim will accrue when damage is sustained, the two-year statute of limitations can still be tolled based on the aggrieved party’s ignorance. Thus, like its fraud claim, the timeliness of TCVH’s breach-of-fiduciary-duty claim will ultimately hinge on when TCVH was damaged and TCVH’s knowledge of the relevant facts.
 

 Dr. Patterson gave unequivocal testimony regarding both of those points in her deposition. With regard to the damage sustained by TCVH, Dr. Patterson testified that by June 2005 it was clear that PJ Construction’s work product was not what one would expect from a licensed general contractor because, she stated, PJ Construction was committing obvious violations of building codes and was not completing its work in a workmanlike manner. When asked by First Tuskegee’s attorney specifically whether TCVH had, at that point in time, been damaged by the actions of PJ Construction, she readily agreed that it had:
 

 “Q. Did you feel, as of June 2005, that these delays that failed to meet your expectations for [PJ Construction] had caused harm to [TCVH]?
 

 “A. Yes.
 

 “Q. That harm being financial?
 

 “A. Yes.
 

 “Q. And physical?
 

 “A. Yes.”
 

 When asked to clarify when TCVH learned that PJ Construction was not a licensed general contractor, Dr. Patterson also made it clear that she had become aware of that fact in approximately July 2005:
 

 “Q. Did you ever attempt to do any investigation as to whether [PJ Construction] was a licensed general contractor with the state licensing board?
 

 “A. After their departure, I made .an effort to find out about their guarantee — bond surety so that we would be able to file to get enough funds to complete it. And at that time, I found out that they were not licensed general contractors. I went to every agency in Montgomery County, and no one had ever — they weren’t recorded as a general contractor’s license anywhere in the state of Alabama.
 

 “Q. And when did that take place?
 

 
 *39
 
 “A. After their departure, when I was trying to get the surety bond to make sure it was in force. After I spoke with Ms. Sutton,
 
 [5]
 
 she gave me a copy of the surety bond. And I called that company, and then I went about getting the information to have a meeting with Mr. Wright.
 

 “Q. And this would have been at some point shortly after July 2006?
 

 “A. Yes.
 

 “Q. I!m sorry. 2005.
 

 “A. 2005. Yes.”
 

 Thus, Dr. Patterson, TCVH’s corporate representative, acknowledged that, by approximately July 2005, TCVH was aware 1) that the misrepresentation First Tuskegee allegedly made — that PJ Construction was a licensed general contractor that would do a good job — was false and 2) that TCVH had been injured as a result of that misrepresentation. The breach-of-fidueia-ry-duty and fraud claims subsequently asserted in the April 2009 action were accordingly untimely because they were not asserted for more than two years after they accrued in approximately July 2005.
 

 We further note, with regard to TCVH’s argument that, via her affidavit contradicting her deposition testimony, Dr. Patterson created a genuine issue of material fact regarding when TCVH learned that PJ Construction lacked a general contractor’s license, that this argument is not properly before us. The trial court struck Dr. Patterson’s affidavit pursuant to the sham-affidavit doctrine (although it did not specifically invoke that doctrine by name), and it also appears to be undisputed that the affidavit was untimely. See
 
 Van Voorst v. Federal Express Corp.,
 
 16 So.3d 86, 90-92 (Ala.2008) (noting that there were “multiple valid grounds” for the trial court to strike an affidavit that contradicted a party’s previous sworn testimony and that was also untimely filed). Nevertheless, TCVH continues to cite the affidavit, although it has not offered any argument as to whether the trial court erred by striking the affidavit. In
 
 Gonzalez v. Blue Cross/Blue Shield of Alabama,
 
 689 So.2d 812, 819 (Ala.1997), abrogated on other grounds, as recognized by
 
 Ex parte Prudential Ins. Co. of America, 785
 
 So.2d 348, 350 (Ala.2000), this Court considered a similar situation and stated:
 

 “The [appellants’] brief merely cites the affidavit as if it had been admitted as evidence, but the [appellants] completely fail to argue why excluding the affidavit was error and they cite no authority to support their position. ‘When an appellant fails to properly argue an issue, that issue is waived and will not be considered on appeal.’
 
 Sullivan v. Alfa Mut. Ins. Co.,
 
 656 So.2d 1233 (Ala.Civ.App.1995), citing
 
 Boshell v. Keith,
 
 418 So.2d 89 (Ala.1982).”
 

 See also
 
 Chambers v. Advanced Processing Sys.,
 
 853 So.2d 984, 990 (Ala.Civ.App.2002) (“Given the plaintiffs’ failure to demonstrate that the trial court erred in ordering Chambers’s affidavit stricken, we may not consider the assertions set forth in that affidavit in our review of this appeal.”). Thus, there is no real dispute regarding the date TCVH learned that PJ Construction was not licensed, and, accordingly, both TCVH’s breach-of-fiduciary-duty claim and its fraud claim are untimely.
 
 [6]
 
 .
 

 IV.
 

 TCVH asserted breach-of-fiduciary-duty and fraud claims against First Tuskegee stemming from a construction loan First Tuskegee made to TCVH in September 2004. The gravamen of those claims was
 
 *40
 
 that TCVH was injured by First Tuskegee’s alleged insistence that TCVH use PJ Construction as the general contractor on the project although PJ Construction was not licensed as a general contractor in Alabama, that PJ Construction’s work product was below what one would expect from a properly licensed general contractor, and that using PJ Construction resulted in delays, cost overruns, and, TCVH argues, the ultimate failure of its business. However, because TCVH’s claims accrued in approximately July 2005 and TCVH did not formally assert them until after it initiated this action in April 2009, those claims are barred by the two-year statute of limitations that governs them. Accordingly, the summary judgment entered by the trial court in favor of First Tuskegee is hereby affirmed.
 

 AFFIRMED.
 

 MOORE, C.J., and PARKER, SHAW, and WISE, JJ., concur.
 

 [1]
 

 . First Tuskegee emphasizes to this Court on appeal that the loan agreement makes no mention of PJ Construction. First Tuskegee further argues that there is no evidence in the record establishing that First Tuskegee required TCVH to use PJ Construction as its general contractor in order to receive the loan. However, because First Tuskegee stated in its summary-judgment motion that “[this] allegation will be taken as true for purposes of summary judgment,” we will also accept it as true when reviewing the summary judgment subsequently entered on that motion.
 

 [2]
 

 . Some of the initial loan proceeds were used to pay off an existing mortgage on TCVH’s property.
 

 [3]
 

 . PJ Construction received a total of $111,000 for work performed on behalf of TCVH— $50,000 in January 2005 and $61,000 in April 2005. In February 2006, PJ Construction sued TCVH, alleging that TCVH owed it an additional $137,198 under their contract; however, that lawsuit was ultimately dismissed because PJ Construction was not a licensed general contractor. See, e.g.,
 
 Twickenham Station, Inc. v. Beddingfield,
 
 404 So.2d 43, 45 (Ala.1981) (stating that it is illegal for an unlicensed contractor to contract to perform the work of a contractor as defined in § 34-8-1, Ala.Code 1975, and that any such contract is void and unenforceable).
 

 [4]
 

 . This tolling of the limitations period for claims against trustees has now been codified in § 19-3B-1005, Ala.Code 1975.
 

 [5]
 

 5. Vanessa Sutton is a branch manager employed by First Tuskegee.
 

 [6]
 

 . Having held that TCVH’s claims are untimely, it is unnecessary for us to consider the other arguments put forth by First Tuskegee
 
 *40
 
 urging us to affirm the summary judgment on other grounds, such as whether First Tuskegee in fact owed any fiduciary duties to TCVH.